# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:09cv308

| | | |
|---|---|---|
| **GLEN A. PIPPEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(b), pursuant a specific Order of referral of the district court, and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

### I.    Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits, as well as a request for Supplemental Security Income. Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which

plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II.    Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

    a.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

    b.    An individual who does not have a "severe impairment" will not be found to be disabled;

    c.    If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.    If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.    If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R.  404.1520(b)-(f).  In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

## C.    The Administrative Decision

At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity from his alleged onset date of September 1, 2006.  Tr., at 12. At Step Two, theALJ found that plaintiff suffered from the following severe impairments: back pain; anxiety; and depression.  Tr., at 12. At Step Three, the ALJ found that such impairments, even though they were severe,  did not meet or medically equal any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Tr.,15. Before reaching Step Four, the ALJ considered plaintiff's residual functional capacity (hereinafter "RFC") and determined that plaintiff retained the RFC to perform simple, routine, repetitive work with occasional public contact at the medium level of exertion.  Tr., at 15. At Step Four, the ALJ considered whether plaintiff could return to his past

relevant work, finding that his RFC prevented plaintiff from performing his past relevant work. Tr., at16. At Step Five, the ALJ considered whether plaintiff could have performed other work existing in significant numbers in the national economy, Tr., at 17-18, and relied upon the Medical-Vocational Guidelines (hereinafter the "Grids") and the testimony of a vocational expert (hereinafter "VE") to conclude that plaintiff could have performed other work existing in the national economy and that he was, therefore, not disabled within the meaning of the Social Security Act. Tr., at 17.

**D.    Discussion**

**1.    Plaintiff's Assignments of Error**

Plaintiff has made the following assignments of error:

I.    Whether the ALJ's RFC finding is supported by substantial evidence.
    A.    Mental RFC.
    B.    Mental RFC Fails to Account for Functional Limitations.
    C.    Physical RFC.

II.    Whether the ALJ relied on improper VE testimony.

III.    Whether the Commissioner erred in failing to weigh new and material evidence submitted to the Appeals Council.[1]

Plaintiff's assignments of error will be discussed *seriatim*.[1]

---

[1]    The court notes and appreciates the fine manner in which plaintiff's counsel has structured the supporting brief. It is a model of clarity. The court would suggest that future briefs be filed through ECF in a PDF readable format, thereby allowing all the parties as well as the court to take full advantage of electronic filing.

## 2.    First Assignment of Error

In the First Assignment of Error, plaintiff contends that the ALJ's RFC finding was not supported by substantial evidence. The ALJ is solely responsible for determining the Residual Functional Capacity (hereinafter "RFC") of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined immediately prior to the Fourth Step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    Mental RFC.

Plaintiff first contends that the ALJ erred in his determination of plaintiff's mental RFC. The Commissioner has fairly restated and then summarized the mental health evidence of record at pages four through eight of his brief.

As to plaintiff's mental RFC, the ALJ determined that plaintiff was capable of performing simple, routine, repetitive work with occasional public contact.    Tr., at 15.  Even Ms. McDonald, plaintiff's counselor, found that plaintiff was capable of performing simple and even detailed tasks without a problem. Tr., at 327. Dr. Joseph, who evaluated plaintiff upon his hospitalization for alleged suicidal ideation, opined

that plaintiff did not have a medically diagnosed mental illness and that it appeared he wanted to obtain a diagnosis so he could receive disability benefits. Tr., at 307. The ALJ's mental RFC determination finds further support in the administrative record inasmuch as both of the state agency physicians who reviewed Plaintiff's medical history found him capable of performing simple, routine, repetitive tasks with occasional public contact, Tr., at 185, 252, constituting substantial evidence . Smith v. Schweicker, 795 F.2d 343, 345-346 (4th Cir. 1986); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).

## 1. Dr. Berg

In making such RFC determination, plaintiff argues that the ALJ improperly substituted his opinion for that of an expert, Dr. Berg, who was of the opinion that plaintiff may have mild to moderate difficulties sustaining attention to perform simple, repetitive tasks due to problems with concentration from pain. Plaintiff saw Dr. Berg on March 15, 2007, for a consultative *psychological* examination. Tr., at 172-75. Clearly, the ALJ considered such opinion, Tr., at 13, and discussed her findings at length. Id. The ALJ specifically addressed her conclusion concerning plaintiff's ability to sustain attention due to problems with concentration due to pain, finding that "this appeared to be based solely on the claimant's subjective complaints of pain." Id. The ALJ was simply under no obligation to accept such conclusion as it was

based on subjective complaints of pain made during a psychological evaluation. Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1996); Ware v. Schweiker, 651 F.2d 408, 413 (5th Cir. 1981).

## 2. Ms. Newman

Plaintiff also contends that the ALJ erred by not discussing the opinion of Ms. Newman. On June 18, 2007, Ms. Newman, a physician's assistant, completed a questionnaire regarding plaintiff's work related capabilities. Tr., at 253-55. Ms. Newman found that plaintiff would be capable of work, depending on the type of work, and that his emotional issues would likely affect him more than his physical impairments. Tr., at 253. Ms. Newman found that plaintiff's prognosis was fair, assuming his anxiety and depression could be controlled. Tr., at 254. While not taking away from physician assistants, who play a valuable and growing role in providing health care, a physician's assistant is not an acceptable medical source, 20 C.F.R. §§ 404.1502, 416.902, 404.1513(a), 416.913(a), and it cannot be error for the ALJ to give such an opinion little or even no consideration. Under 20 C.F.R. § 404.1513(d), a plaintiff is, however, permitted to submit evidence from "other sources":

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to--

> (1)     Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);
>
> (2)     Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers);
>
> (3)     Public and private social welfare agency personnel; and
>
> (4)      Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).

Id.  In Morgan v. Barnhart, 2005 WL 1870019 (4th Cir. 2005),[2] the Court of Appeals for the Fourth Circuit addressed what consideration an ALJ must give to corroborative lay opinions submitted in accordance with Part 404.1513(d).  There, the appellate court, while not reaching the issue (making such *dicta*), agreed that an ALJ could not simply discredit such lay evidence based on inherent familial bias; instead, the appellate court found that the ALJ, implicitly and properly, discredited such lay opinions as not consistent with the medical record and the functional capacity evaluation.  Id., at **7.   In this case, even if the ALJ had made mention of such evidence, it would have been for naught inasmuch as the checkmarked conclusions on the disability questionnaire are not supported by treatment notes.  Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987).

---

[2]      Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

### 3.    Dr. Joseph v. Ms. McDonald

Plaintiff next argues that the ALJ assigned too much weight to the opinion of Dr. Joseph and not enough weight to the opinion of Ms. McDonald.  Plaintiff's Brief, at 8-9.  Dr. Joseph was plaintiff's attending physician after he was admitted to a hospital based upon complaints of depression and suicidal ideation.  Plaintiff was admitted on February 5, 2008, and discharged on February 11, 2008.  Tr., at 289-96, 303-308.

Upon discharge, Dr. Joseph opined in a psychiatric report that plaintiff responded to Dr. Joseph's questions by saying that "he [could] provide information through his lawyer who [wa]s applying for disability for him." Tr., at 306.  Dr. Joseph found that plaintiff did not "come across as having any major symptoms of depression or any other psychiatric illness that warrant[ed] long time hospitalization." Tr., at 303.  Dr. Joseph further concluded that during plaintiff's evaluation it became "obvious that [Plaintiff] was hoping that hospitalization would help him get on disability." Tr., at 303. Plaintiff admitted to Dr. Joseph that he had moved to North Carolina from Mississippi in hopes of qualifying for Social Security disability benefits. Tr., at 303. Plaintiff argues that the ALJ should have relied, instead, on the opinions of plaintiff's community services worker, Ms. McDonald, who assigned plaintiff a GAF score of 40 even though she found plaintiff had no limitations with respect to his ability to

carry out short and simple instructions as well as detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary guidelines, interact appropriately with the general public, ask simple questions or request assistance, get along with coworkers and peers without distracting them, maintain socially appropriate behavior, and be aware of normal hazards and take appropriate precautions.  Tr., at 327-28.

Review of the ALJ's decision reveals that Ms. McDonald's findings were in fact considered.  See Tr., at 14.  The fact that the ALJ gave greater weight to opinions of Dr. Joseph, a trained physician who provided care to plaintiff in a hospital setting, than to those of a community service worker whose GAF conclusion was in conflict with her own findings in her Medical Source Assessment, is well within the realm of conflict the ALJ is tasked with resolving, Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

### 4.    Capacity to Concentrate and Keep Pace

Plaintiff also contends that the ALJ erred in finding that plaintiff could concentrate and keep pace for two-hour segments during each work day because plaintiff moderately limited in such areas.  Plaintiff's Brief, at 9.  Review of the ALJ's decision and the record reveals that he relied on the opinion of a state agency physician, who reviewed plaintiff's medical records, and who found that plaintiff

would have no problem completing a regular work day and work week despite moderate limitations in concentration, persistence, and pace. Tr., at 185. The ALJ's conclusion is, therefore, supported by substantial evidence of record. A finding that a person who has a moderate impairment is not inconsistent with a finding that such person could keep pace in two-hour increments during each work day inasmuch as a moderate limitation is defined as affecting but not precluding functioning in a particular area. Camp v. Schweicker, 643 F.2d 1325, 1330 n.2 (8th Cir. 1981).

## B.     Mental RFC Fails to Account for Functional Limitations

Plaintiff also argues that the ALJ failed to account for his "severe anxiety and depression in a meaningful way." Plaintiff's Brief, at 10. Plaintiff contends that because the state agency medical consultant found that he had some moderate limitations, as identified on the Psychiatric Review Technique Form (PRTF) and Mental RFC Assessment Form, that the ALJ was required to adopt these moderate limitations into his RFC determination. Plaintiff's Brief, at 10-13. Plaintiff is mistaken.

The ALJ is under no obligation to accept the "check-box conclusions" found in Section I of the Mental RFC form. Instead, as provided on the face of the form itself, the criteria found in Section I of the form should be used to provide a more

detailed assessment of RFC in Section III of the form. The Social Security

Administration's own *Policy Memorandums* (hereinafter "POMS") support a finding

that an ALJ is not required to include each of the moderate limitations set forth in

Section I of the Mental RFC assessment form in his hypothetical question:

> The purpose of section I ("Summary Conclusion") [of the MRFC form]
> is chiefly to have a worksheet to ensure that the psychiatrist or
> psychologist has considered each of these pertinent mental activities and
> the claimant's or beneficiary's degree of limitation for sustaining these
> activities over a normal workday and workweek on an ongoing,
> appropriate, and independent basis. **It is the narrative** written by the
> psychiatrist or psychologist **in section III** ("Functional Capacity
> Assessment") of [the MRFC form] **that adjudicators are to use as the
> assessment of RFC.** Adjudicators must take the RFC assessment **in
> section III** and decide what significance the elements discussed in this
> RFC assessment have in terms of the person's ability to meet the mental
> demands of past work or other work.

POMS DI 25020.010.B.1 (emphasis in original). Contrary to plaintiff's argument, the

POMS makes clear that the ALJ should rely on the Functional Capacity Assessment

in Section III of the form when formulating an RFC assessment.

The POMS further provide specific guidance on the use that should be made of

Section I of the Mental RFC form: "[it] is merely a worksheet to aid in deciding the

presence and degree of functional limitations and the adequacy of documentation and

does not constitute the RFC assessment." POMS DI 24510.060B2a. Plaintiff's

argument that the ALJ erred in failing to include the "moderate" limitations in Section

I of the form in his RFC determination is without merit as a matter of law.

* * *

Substantial evidence supports the ALJ's mental RFC determination, and the undersigned will recommend that the Commissioner's decision be affirmed.

## C.    Physical RFC

Plaintiff also contends that substantial evidence does not support the ALJ's physical RFC assessment. Plaintiff's Brief, at 13-15. The ALJ found that plaintiff had the RFC to perform medium work. Tr., at 15. The Commissioner has fairly summarized the medical evidence that supports such conclusion at pages 13 through 15 of his brief. Examination of plaintiff's back, hips, pelvis, and head showed no abnormalities, Tr., at 178, 247, 257, 302, and aside from having "low" bone density, for which plaintiff was prescribed medication, Tr., at 266, he does not have a documented history of physical impairment.

In addition, the ALJ's decision is also supported by the activities of daily living. While plaintiff testified under oath that he relied on his sister to do the cleaning, cooking, dishes, and grocery shopping, Tr., at 38, plaintiff admitted on examination by the ALJ that his sister was disabled due to a back injury and was receiving Social Security disability benefits. Tr., at 39. Thus, there is strong support in both the medical evidence and plaintiff's own testimony for not fully crediting plaintiff's own reports of a restricted life. The ALJ concluded that while plaintiff "reported a rather

restricted lifestyle" that such "appears to be self-imposed as no physician has directed the claimant to limit his activities." Tr., at 16. The ALJ also found that "the objective medical findings do not document an impairment that could reasonably be expected to result in such limitation of activity." Tr., at 16.

Finally, the ALJ's physical RFC providing for medium work finds substantial support in the opinions of both of the state agency medical consultants who reviewed plaintiff's medical records and determined that his alleged impairments would not preclude his ability to perform medium work. Tr., at 208, 251.

* * *

Substantial evidence supports the ALJ's physical RFC determination, and the undersigned will recommend that the Commissioner's decision be affirmed.

### 3. Second Assignment of Error

#### A. Reasoning Levels

In his second assignment of error, plaintiff contends that the ALJ erred by relying on improper VE testimony. Plaintiff argues that the VE erroneously identified jobs with a "reasoning level" of two, despite the fact that he was limited to simple, routine, repetitive tasks by the ALJ, to wit, a reasoning level of one. Plaintiff's Brief,

at 15-17. Plaintiff argues that because jobs with a reasoning level of two require "detailed but uninvolved written or oral instruction" that he was incapable of performing these jobs with an RFC of simple, routine, repetitive tasks. Plaintiff's Brief, at 15).

Plaintiff's argument is flawed as a matter of law because work requiring a reasoning level of two are not inconsistent with a limitation to simple work. Reasoning level two jobs require an individual to apply "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "deal with problems involving a few concrete variables in or from standardized situations," which is consistent with a limitation to simple work. Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005). Although reasoning level two requires the understanding to carry out detailed instructions, "it specifically caveats that the instructions would be uninvolved--that is, not a high level of reasoning." Flaherty v. Halter, 182 F. Supp. 2d 824, 850 (D. Minn. 2001). As explained in Temple v. Callahan,1997 WL 289457, at *2 (9th Cir. May 29, 1997),[3] "work that requires 'commonsense understanding' is simple. Work that requires 'uninvolved written or oral instructions' is simple and routine." As the performance of jobs with a reasoning level of two is not inconsistent

_____

[3]     Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

with a limitation to simple, routine, repetitive tasks, plaintiff's argument is without merit as a matter of law.

## B.    DOT

Plaintiff further argues that the ALJ was obliged to ask the VE whether his testimony was consistent with the Dictionary of Occupational Titles (DOT) and to resolve any conflicts between the VE's testimony and the DOT at the hearing. Plaintiff's Brief, at 15.   Review of the ALJ's decision, however, reveals that the ALJ made such determination, finding that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the dictionary of occupational titles."  Tr., at 18.  See also http://www.occupationalinfo.org/.

Plaintiff is correct, however, that S.S.R. 00-4p requires the ALJ to ask the VE whether his or her testimony is consistent with the DOT:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative* responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

S.S.R. 00-4p, at *4 (emphasis added).  There is a split among the circuits and district courts as to whether this failure to ask requires remand. See Lancaster v. Comm'r of

Soc. Sec., 228 Fed.Appx. 563 (6th Cir. 2007)(discussing the split and collecting cases); Wix v. Astrue, 2010 WL 520565, n.4 (M.D. Tenn. Feb.9, 2010)(same). [4] While the Court of Appeals for the Fourth Circuit has not issued a published decision on such issue, the undersigned believes that the Fourth Circuit would determine that an ALJ's failure to inquire about consistency with the DOT is not reversible error unless a potential conflict actually exists. See Justin v. Massanari, 20 Fed.Appx. 158, 160 (4th Cir.2001) (unpublished case, finding that an ALJ is only required "to address evident discrepancies between a vocational expert's testimony and the [DOT]"). The undersigned finds that where, as here, the ALJ technically erred in failing to inquire about conflicts under S.S.R. 00-4p, but where there are no evident discrepancies between a vocational expert's testimony and the DOT, such an oversight does not amount to reversible error. Id.

## C.    Number of Jobs

Plaintiff next takes issue with the methodology, or lack thereof, employed by the ALJ in determining the number of jobs plaintiff could perform in the national economy.   Proper qualification of a vocational expert (as was accomplished in this case, Tr., at 39) provides the necessary foundation for his or her testimony concerning

---

[4]    Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

the number of jobs available in a particular area.  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211,

1218 (9th Cir. 2005).  Indeed, counsel for plaintiff stated at the hearing that "we'd

stipulate she's an expert in the field . . . ."  <u>Id.</u>, at 39.  While plaintiff's counsel was

afforded an opportunity to cross examine the VE immediately after she testified to the

number of jobs available in the national economy, counsel in no manner challenged the

VE's testimony concerning number of jobs in the national economy.  Tr., at 43-46.

There is no evidence of record that the numbers testified to by the VE are incorrect;

therefore, not only does the VE's testimony provide substantial evidence supporting

the ALJ's decision, it is the only evidence of record. The purpose of bringing in a VE

is to assist the ALJ in determining whether there is work available in the national

economy which this particular plaintiff can perform.  In order for a vocational expert's

opinion to be relevant or helpful, it must be based upon a consideration of all other

evidence in the record, <u>Chester v. Mathews</u>, 403 F. Supp. 110 (D.Md. 1975), and it

must be in response to proper hypothetical questions which fairly set out all of

claimant's impairments.  <u>Stephens v. Secretary of Health, Education and Welfare</u>, 603

F.2d 36 (8th Cir. 1979).  The undersigned finds that it is, and finds no merit to this

assignment of error.

### 4.    Third Assignment of Error

In the Third Assignment of Error, plaintiff contends that the Commissioner erred in failing to weigh new and material evidence submitted to the Appeals Council.

The Appeals Council is required by 20, Code of Federal Regulation, Part 404.970, to review certain decisions of an ALJ. In pertinent part, the regulation provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970.

Contrary to plaintiff's assertion that the Appeals Council failed to consider the new evidence he presented, review of the Notice of Appeals Council Action reveals that it did consider the evidence submitted by plaintiff:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of the Appeals Council.
>
> We found that this information did not provide a basis for changing the Administrative Law Judge's decision.

Tr., at 1-2. Thus, the Appeals Council did not violate 20, Code of Federal Regulation, Part 404.970 as suggested by plaintiff. The Court of Appeals for the Fourth Circuit has

held that when, as here, the Appeals Council specifically incorporates evidence into the administrative record a reviewing court must consider that evidence along with the evidence that was presented to the ALJ in determining whether the Commissioner's decision is supported by substantial evidence. Wilkins v. Sec'y of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff argues that the critical part of the evidence first submitted to the Appeals Council, his treatment records from 1975-1986 (which document his mental impairment) were not properly considered by the Commissioner because the Appeals Council failed to elaborate on the new evidence. Plaintiff's Brief, at 18. In Wilkins, the Court of Appeals for the Fourth Circuit held that evidence is new if it "is not duplicative or cumulative," and is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Id., at 96. See also Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). While it appears that such evidence is new, it does not appear that it is material in that there is not a reasonable possibility that had such evidence been available to the ALJ there would have been a different outcome.

First, the period under review began September 1, 2006 (plaintiff's own alleged onset date) through his date last insured of June 30, 2009. Tr., at 11-12. Evidence

concerning plaintiff's condition twenty years earlier, Tr., at 370-404, is not material because there is no "reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d at 96. While medical records and other evidence preceding the alleged onset date of disability may well be material in most circumstances, the latest records submitted here predate onset by some 20 years and do nothing to change the ALJ's finding that "[t]he medical evidence of record reflects that the claimant had not received treatment for his anxiety and depression until after filing for disability benefits." Tr., at 13. Clearly, the evidence submitted did not relate to the relevant time period and the ALJ was already aware that plaintiff had a history of mental illness. Tr., at 13.

Plaintiff also submitted additional evidence from RHA Health Services, some of which concern the period after the date of the ALJ's decision. Tr., at 349-52. The Appeals Council is not obliged to consider evidence that was produced after the date of the ALJ's decision. Wilkins, 953 F.2d at 95-96 (for new and material evidence to be considered by the Appeals Council, it must relate "to the period on or before the date of the ALJ's decision"). Finally, some of the new evidence from RHA actually supports the Commissioner's decision, Tr., at 352-369, and as such need not be considered by the Appeals Council under Wilkins as there is no reasonable possibility

that evidence that would support the Commissioner's final decision would have changed the outcome.  <u>Id.</u>, at 96.


## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)     the decision of the Commissioner, denying the relief sought by plaintiff, be **AFFIRMED**;

(2)     the plaintiff's Motion for Summary Judgment (#8) be **DENIED**;

(3)     the Commissioner's Motion for Summary Judgment (#10) be **GRANTED**; and

(4)     this action be **DISMISSED**.


## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be

filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: August 23, 2010

Dennis L. Howell
United States Magistrate Judge